**WAKEMED v. N.C. DEP'T OF HEALTH & HUMAN SERVS.**

[225 N.C. App. 253 (2013)]

WAKEMED, Petitioner
v.
NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES,
DIVISION OF HEALTH SERVICE REGULATION, CERTIFICATE OF
NEED SECTION, Respondent
AND
REX HOSPITAL, INC. d/b/a REX HEALTHCARE, Respondent-Intervenor

No. COA12-364

Filed 15 January 2013

**Administrative Law—certificate of need—statutory compliance**

The North Carolina Department of Health and Human Services, Division of Health Service Regulation (DHHS) did not err by issuing a final agency decision accepting an administrative law judge's recommended decision dismissing plaintiff WakeMed's challenge to the issuance of a certificate of need ("CON") to Rex Healthcare (Rex) and awarding a CON to Rex. DHHS correctly determined that it could not apply an N.C.G.S. § 131-183 (a)(13)(a) ("Criterion 13(a)") comparison to Rex's application and correctly assessed Rex's application taking into account the reason and purpose of the law.

Appeal by petitioner from Final Agency Decision entered 24 October 2011 by the North Carolina Department of Health and Human Services. Heard in the Court of Appeals 10 October 2012.

*Smith Moore Leatherwood LLP, by Maureen Demarest Murray and Susan McNear Fradenburg, for petitioner-appellant.*

*Attorney General Roy Cooper, by Special Deputy Attorney General June S. Ferrell, for respondent-appellee.*

*K&L Gates LLP, by Gary S. Qualls and William W. Stewart, Jr., for respondent-intervenor-appellee.*

CALABRIA, Judge.

WakeMed appeals the Final Agency Decision ("FAD") of the North Carolina Department of Health and Human Services, Division of Health Service Regulation ("the Department"), awarding a certificate of need ("CON") to Rex Hospital, Inc. d/b/a Rex Healthcare ("Rex"). We affirm.

## I.  Background

On 15 June 2010, Rex submitted a CON application ("the application") to the Department, proposing to construct an addition to Rex Hospital in Raleigh, North Carolina. Specifically, the addition would expand and consolidate Rex's surgical and cardiovascular services, as well as create a new main entrance and public concourse in the hospital. The application was not part of a competitive review, but rather a stand-alone application.

The Department's CON section began its review of the application on 1 July 2010. A public hearing on the application was held on 18 August 2010. WakeMed did not have a representative at the public hearing and did not otherwise submit any comments on the application. On 29 October 2010, the CON section conditionally approved Rex's application.

On 24 November 2010, WakeMed filed a petition for contested case hearing in the Office of Administrative Hearings challenging the CON section's approval of the application. Rex was permitted to intervene in the case. Beginning 27 June 2011, a contested case hearing was conducted by Administrative Law Judge Beecher R. Gray ("Judge Gray"). After WakeMed presented its evidence, Rex and the Department made a joint motion to dismiss based upon WakeMed's failure to show either substantial prejudice or agency error. Judge Gray granted the motion on both grounds and issued a Recommended Decision dismissing the case on 19 August 2011.

WakeMed appealed Judge Gray's decision to the Department. On 24 October 2011, the Department issued a FAD which accepted Judge Gray's Recommended Decision. The FAD dismissed WakeMed's case and awarded the CON to Rex. WakeMed appeals.

## II.  Standard of Review

A CON determination will only be reversed if the appellant demonstrates that its substantial rights have been prejudiced because the decision, findings, or conclusions of the Department are:

    (1)  In violation of constitutional provisions;

    (2)  In excess of the statutory authority or jurisdiction of the agency;

    (3)  Made upon unlawful procedure;

    (4)  Affected by other error of law;

(5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or

(6) Arbitrary or capricious.

*Parkway Urology, P.A. v. N.C. Dep't of Health & Human Servs.*, 205 N.C. App. 529, 534, 696 S.E.2d 187, 192 (2010) (quoting *Total Renal Care of N.C., LLC v. N.C. Dep't of Health & Human Servs.*, 171 N.C. App. 734, 739, 615 S.E.2d 81, 84 (2005) (quoting N.C. Gen. Stat. § 150B-51(b) (1999))), *disc. rev. denied*, 365 N.C. 78, 705 S.E.2d 753 (2011).

> The substantive nature of each assignment of error controls our review of an appeal from an administrative agency's final decision. Where a party asserts an error of law occurred, we apply a *de novo* standard of review. If the issue on appeal concerns an allegation that the agency's decision is arbitrary or [capricious] or fact-intensive issues such as sufficiency of the evidence to support [an agency's] decision we apply the whole-record test.

*Craven Reg'l Med. Auth. v. N.C. Dep't. of Health & Human Servs.*, 176 N.C. App. 46, 51, 625 S.E.2d 837, 840 (2006)(internal quotations and citation omitted).

### III. Criterion 13(a)

WakeMed argues that the Department erred in issuing a CON to Rex. Specifically, WakeMed contends that the Department failed to apply the express language of N.C. Gen. Stat. § 131-183 (a)(13)(a) ("Criterion 13(a)") to the application. We disagree.

"N.C. Gen. Stat. § 131E-183(a) charges the Agency with reviewing all CON applications utilizing a series of criteria set forth in the statute. The application must either be consistent with or not in conflict with these criteria before a certificate of need for the proposed project shall be issued." *Parkway Urology*, 205 N.C. App. at 534, 696 S.E.2d at 191-92. In the instant case, WakeMed specifically challenges the Department's conclusion that Rex's application complied with Criterion 13(a). This criterion states:

> The applicant shall demonstrate the contribution of the proposed service in meeting the health-related needs of the elderly and of members of medically underserved

groups, such as medically indigent or low income persons, Medicaid and Medicare recipients, racial and ethnic minorities, women, and handicapped persons, which have traditionally experienced difficulties in obtaining equal access to the proposed services, particularly those needs identified in the State Health Plan as deserving of priority. For the purpose of determining the extent to which the proposed service will be accessible, the applicant shall show:

> a. The extent to which medically underserved populations currently use the applicant's existing services in comparison to the percentage of the population in the applicant's service area which is medically underserved;

N.C. Gen. Stat. § 131E-183 (a)(13)(a) (2011). WakeMed argues that, in order to satisfy this criterion, Rex was required to submit an explicit comparison of "the extent to which medically underserved populations currently use the applicant's existing services" and "the percentage of the population in the applicant's service area which is medically underserved." *Id.* The Department concedes that the comparison sought by WakeMed was not included in Rex's application.

However, in the FAD, the Department declined to adopt WakeMed's statutory interpretation of Criterion 13(a) because it concluded that the comparison sought by WakeMed was impossible to apply to Rex's application. WakeMed contends that the Department's interpretation of Criterion 13(a) is erroneous because it directly conflicts with the plain language of the statute by failing to require a comparison.

> Although the interpretation of a statute by an agency created to administer that statute is traditionally accorded some deference by appellate courts, those interpretations are not binding. The weight of such [an interpretation] in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.

*Britthaven, Inc. v. N.C. Dept. of Human Resources*, 118 N.C. App. 379, 384, 455 S.E.2d 455, 460 (1995) (internal quotations and citation omitted).

The Department based its interpretation of Criterion 13(a) on, *inter alia*, the following findings of fact:

> 421. N.C. Gen. Stat. § 131E-183(a)(13)(a) ("Criterion 13(a)") requires an applicant to show the extent to which the medically underserved populations currently utilize applicant's existing services. According to [CON Section Assistant Chief Martha] Frisone, the Agency has typically reviewed this criterion by reviewing the percentage of the facility's total patients that fit into the various categories of "medically underserved," such as Medicare, Medicaid, handicapped, racial and ethnic minorities and women.
>
> 422. Applicants provide their historical payor mix to demonstrate conformity to Criterion 13.
>
> . . .
>
> 441. Criterion 13(a) does not have a litmus test or a specific number, either percentage or monetary amount, that must be satisfied for conformity.
>
> . . .
>
> 444. All of the payor mix information presented by WakeMed at the contested case hearing was on an aggregate basis based on the particular facility as a whole and WakeMed witnesses were unable to provide any service-line specific information. This facility-wide data appears unreliable for use in any comparison under Criterion 13(a) for a number of reasons.
>
> . . .
>
> 451. A meaningful comparison of the payor mix for the specific service lines proposed in Rex's Application cannot be made because the information is not publically available.
>
> . . .
>
> 453. Under Criterion 13(a), the Agency did not err in failing to make the type of payor mix percentage comparisons that WakeMed proposes should have been made.

454. Rex's Application adequately explained and documented that it does not discriminate on the basis of income, race, ethnicity, sex, handicap, age or any other factor which might restrict access to services. Rex's Application also adequately provided its historical payor mix during FY2009 for all services at Rex as well as for each service component of the proposed project.

Thus, the Department found that the evidence presented at the CON hearing demonstrated that it could not conduct a meaningful comparison of the services proposed in Rex's application under Criterion 13(a) as proposed by WakeMed.

Our Supreme Court has explained that "[t]he language of a statute should always be interpreted in a way which avoids an absurd consequence: A statute is never to be construed so as to require an impossibility if that result can be avoided by another fair and reasonable construction of its terms." *Sheffield v. Consolidated Foods Corp.*, 302 N.C. 403, 423, 276 S.E.2d 422, 435 (1981)(internal quotations and citation omitted). Moreover, "where a literal interpretation of the language of a statute will lead to absurd results, or contravene the manifest purpose of the Legislature, as otherwise expressed, the reason and purpose of the law shall control and the strict letter thereof shall be disregarded." *Frye Reg'l Med. Ctr. v. Hunt*, 350 N.C. 39, 45, 510 S.E.2d 159, 163 (1999)(internal quotations and citation omitted). Thus, we must determine (1) whether the Department was correct that it could not apply a Criterion 13(a) comparison to Rex's application; and (2) if so, whether the Department correctly assessed Rex's application taking into account the reason and purpose of the law.

A.  Facility-wide Data

WakeMed contends that the Department incorrectly determined that a comparison was not possible under Criterion 13(a) for Rex's application. WakeMed argues that the Department erred by focusing on the specific payor lines included in Rex's application because Criterion 13(a) instead "requires evaluation of the extent to which medically underserved populations **currently** use **all** of the applicant's existing services in comparison to the percentage of the population in the applicant's service area which is medically underserved," and the Department could have performed such a comparison.

To support its argument that Criterion 13(a) requires the Department to examine all of an applicant's existing services,

WAKEMED v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[225 N.C. App. 253 (2013)]

WakeMed notes that subsection (a) of Criterion 13 specifically requires the CON applicant to demonstrate "[t]he extent to which medically underserved populations currently use the applicant's existing services." WakeMed then notes that, in contrast, subsection (c) of Criterion 13 requires the CON applicant to demonstrate "[t]hat the elderly and the medically underserved groups identified in this subdivision will be served by the applicant's proposed services." N.C. Gen. Stat. § 131E-183(a)(13)(a), (c). WakeMed contends that the use of the term "proposed services" in Criterion 13(c) shows that the term "existing services" in Criterion 13(a) does not refer to just the applicant's existing proposed services, but instead refers to all of the applicant's existing services.

However, as noted by the Department, WakeMed's interpretation ignores the prefatory language of Criterion 13, which applies to and provides context for all of the subsequent subparts of the criterion. This language specifically states that the purpose of Criterion 13 is for "[t]he applicant [to] demonstrate the contribution of the *proposed service* in meeting the health-related needs of the elderly and of members of medically underserved groups[.]" N.C. Gen. Stat. § 131E-183(13) (2011)(emphasis added). The statute specifically directs the Department to use the information required by Criterion 13(a)-(d) "[f]or the purpose of determining the extent to which the *proposed service* will be accessible[.]" *Id.* (emphasis added). It is clear from this prefatory language that, as the Department determined in the FAD, the General Assembly intended the focus of the comparison in Criterion 13 to be in the context of the specific services being proposed in the CON application. Therefore, the Department properly concluded that "the General Assembly's focus in Criterion 13 is upon the services being proposed in the CON application at issue, and not upon the aggregate facility-wide services that are not part of the project proposed in the CON application being reviewed."

Moreover, the FAD contains numerous findings which demonstrate that WakeMed's proposed comparison of facility-wide data under Criterion 13(a) would fail to provide the Department with reliable information. These findings include:

> 446. The aggregate facility-wide data used by WakeMed also does not take into account the different service lines at different hospitals. WakeMed witnesses, including [] Gambill and [William Stanley] Taylor, agreed that payor mixes are variable by hospital service line. Mr.

Gambill testified that he had been able to isolate baby deliveries as being a particular service line that tended to have a higher Medicaid percentage than other service lines.

. . .

449. The aggregate facility-wide data used by WakeMed also does not take into account the different locations and service lines of different hospitals.

The Department's findings establish that the facility-wide data which WakeMed contends should be the basis of the comparison in Criterion 13(a) would provide no information regarding "the extent to which the proposed service will be accessible[.]" N.C. Gen. Stat. § 131E-183(13). Thus, these findings provide further support for the Department's decision to reject WakeMed's proposed interpretation of Criterion 13(a).

Finally, the FAD includes multiple findings which discuss the impact of using the comparison test proposed by WakeMed. Specifically, the Department found, based on the testimony provided by WakeMed's expert, William Stanley Taylor ("Taylor"), that "half of the hospitals in North Carolina (50%) would fail the Criterion 13(a) test that [Taylor] is requesting the Agency to apply to Rex's Application." This finding further demonstrates that the Department properly rejected WakeMed's proposed interpretation of Criterion 13(a), because WakeMed's interpretation, which would lead to half of North Carolina's hospitals being unable to qualify for a CON, clearly produces absurd results which would contravene the General Assembly's manifest purpose in enacting the CON law. Thus, WakeMed's proposed interpretation of Criterion 13(a), which would have required a comparison of an applicant's facility-wide data, violated several principles of statutory construction and the Department correctly rejected it.

B. Service-line Specific Data

In the FAD, the Department additionally concluded that it could not conduct a comparison of the specific service lines included in Rex's application. This conclusion was based upon its finding that there was no publically-available data which could form the basis of any such comparison. WakeMed does not challenge the Department's finding and there was no evidence presented at the CON hearing which conflicts with the Department's finding. Since there was no

publically-available information available to the Department regarding the service lines included in Rex's application, there was no data for the Department to compare. Thus, the Department properly concluded that, under the circumstances of this case, no service-line specific comparison could be conducted under Criterion 13(a) due to this lack of data.

### C. Prior CON Applications

WakeMed additionally argues that the Department's interpretation of Criterion 13(a) with regard to Rex's application is inconsistent with the Department's treatment of prior CON applications. Specifically, WakeMed contends that the Department previously performed a Criterion 13(a) comparison on Hillcrest Convalescent Center ("Hillcrest") and ultimately denied Hillcrest a CON based upon its failure to satisfy that criterion. However, the FAD includes multiple findings which distinguish the Hillcrest application from the Rex application:

> a. The Hillcrest review involved a nursing home facility and the predominant payor for nursing homes is Medicaid, which differs from hospitals as a whole as well as the services in Rex's application;
>
> b. Individual nursing homes do not differ in service lines offered as compared to hospitals that can differ dramatically in service lines which in turn causes different payor mixes among hospitals;
>
> c. The data to perform the comparison analysis in the Hillcrest review was publically-available, as compared to the non-public service-line data of hospitals;
>
> d. The data to perform the comparison analysis in the Hillcrest review related to the services at issue in that review, which differs from WakeMed's assertion that aggregate facility-wide data should be used in the review of Rex's application; and
>
> e. The Hillcrest facility was an aberration, having a 3% Medicaid payor mix as compared to the State average of over 60%.

These findings, which are not challenged by WakeMed, establish that there was sufficient, publically-available data for the Department to conduct a Criterion 13(a) comparison on Hillcrest's application. In

contrast, according to the uncontroverted evidence, noted above, no such publically-available data on the service lines was included in Rex's application. This lack of information formed the basis of the Department's conclusion that it could not perform a Criterion 13(a) comparison on Rex's application. Since this was a substantial difference between Hillcrest's application and Rex's application, WakeMed has failed to demonstrate that the Department has inconsistently applied Criterion 13(a). The interpretation of Criterion 13(a) that the Department applied to Rex's application could only be applicable in a situation, such as the instant case, where a service-line comparison is not possible.

### D.  Purpose of the Statute

The prefatory language of Criterion 13 makes clear that the Department must focus on "the extent to which the *proposed service* will be accessible," N.C. Gen. Stat. § 131-183(a)(13) (emphasis added), rather than the applicant's services as a whole. Moreover, as demonstrated by the Department's findings, the implementation of a facility-wide comparison under Criterion 13(a) would lead to absurd consequences. Therefore, a proper comparison under Criterion 13(a) must focus on the services proposed in the CON application.

In the instant case, the Department's findings and conclusions, supported by the evidence at the CON hearing, establish that it was impossible to compare Rex's service-line specific data to medically underserved populations in Rex's service area due to a lack of available data. Since the FAD definitively established that it was impossible for the Department to conduct the comparison in Criterion 13(a), the Department was required by principles of statutory construction to disregard the literal language of Criterion 13(a) in evaluating Rex's application and instead determine whether "the reason and purpose of the law" were satisfied. *Frye Reg'l Med. Ctr.*, 350 N.C. at 45, 510 S.E.2d at 163.

In the FAD, the Department concluded that Criterion 13 "addresses the degree to which the elderly and members of medically underserved groups have and will have access to the services proposed in the CON application at issue." The Department's conclusion is consistent with the plain language of Criterion 13. In order to determine if Rex complied with this criterion, the Department examined Rex's "historical payor mix during FY2009 for . . . each component of the proposed project." The Department found that Rex did not "discriminate on the basis of income, race, ethnicity, sex, handicap, age,

or any other factor which might restrict access to services." Consequently, the Department concluded that "Rex's Application adequately demonstrated that Rex provides adequate access to medically underserved populations."

Based upon the evidence presented and the Department's unchallenged findings, we hold that the Department properly concluded that Rex's application complied with Criterion 13(a). Although it could not perform an explicit comparison, the Department specifically analyzed Rex's data regarding its prior service to medically underserved individuals. The Department's analysis adequately demonstrates that it was guided by the reason and purpose of Criterion 13 when it found Rex's application in compliance with that criterion. WakeMed's argument is overruled.

WakeMed does not challenge any other portion of the FAD. Since we have concluded that the Department properly concluded that Rex's application complied with Criterion 13(a), it is unnecessary to address WakeMed's argument that it was substantially prejudiced by an error in the Department's approval of Rex's CON application.

### IV. Conclusion

The Department did not err in its interpretation of Criterion 13(a). The prefatory language of Criterion 13 makes clear that the Department must analyze that criterion in the context of the services being proposed in the CON application. Since, in the instant case, it was impossible to conduct a comparison of the specific services proposed in Rex's application, the Department was instead required to apply the reason and purpose of Criterion 13(a) to Rex's application. In this context, the Department properly analyzed Rex's application to determine whether Rex provided adequate access to medically underserved populations. Based upon the findings in the FAD, the Department did not err in its conclusion that Rex's application complied with Criterion 13(a). The FAD is affirmed.

Affirmed.

Judges HUNTER, Robert C. and HUNTER, JR., Robert N. concur.