IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-1037

Filed 6 August 2024

Office of Administrative Hearings, Nos. 23 DHR 1286, 23 DHR 1294

FLETCHER HOSPITAL, INC., d/b/a ADVENTHEALTH HENDERSONVILLE, Petitioner-Appellant and Cross-Appellee,

and

HENDERSON COUNTY HOSPITAL CORPORATION d/b/a PARDEE HOSPITAL, Petitioner-Intervenor-Appellant and Cross-Appellee,

v.

N.C. DEPARTMENT OF HEALTH AND HUMAN SERVICES, DIVISION OF HEALTH SERVICE REGULATION, HEALTH CARE PLANNING & CERTIFICATE OF NEED SECTION, Respondent-Appellant and Cross-Appellee,

and

MH MISSION HOSPITAL LLLP, Respondent-Intervenor-Appellant and Cross-Appellee.

Appeal by Petitioner, Respondent, and Intervenors from final decision entered on 22 June 2023 by Administrative Law Judge David F. Sutton in the Office of Administrative Hearings. Heard in the Court of Appeals 14 May 2024.

*Wyrick Robbins Yates & Ponton LLP, by Charles George, Frank S. Kirschbaum, and Trevor Presler, for petitioner-appellant.*

*Fox Rothschild LLP, by Maureen Demarest Murray, Terrill Johnson Harris, Kip D. Nelson, and Sean Thomas Placey, for petitioner-intervenor-appellant.*

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Derek L. Hunter, for respondent-appellant.*

*Baker, Donelson, Bearman, Caldwell & Berkowitz, a Professional Corporation, by Kenneth L. Burgess, Matthew A. Fisher, Iain M. Stauffer, and William F. Maddrey, for respondent-intervenor-appellant.*

HENDERSON CNTY. HOSP. CORP. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

MURPHY, Judge.

Under N.C.G.S. § 131E-185, the North Carolina Department of Health and Human Services, Division of Health Service Regulation, Health Care Planning and Certificate of Need Section ("the Agency") must hold a public hearing when the proponent proposes to spend five million dollars or more on a proposed facility. However, a challenge to the procedure before the Agency under N.C.G.S. § 150B-23 requires more than a showing of error; a petitioner must also show that substantial prejudice occurred as a result of that error. Here, where an Administrative Law Judge ("ALJ") of the Office of Administrative Hearings reversed the conditional approval of a certificate of need ("CON") by the Agency solely based on the reasoning that the failure to hold a public hearing constituted substantial prejudice *per se* and the final decision is otherwise free of error on review, we reverse and remand the final decision.

## BACKGROUND

This appeal arises from a CON application filed with the Agency on 15 February 2022 by Respondent-Intervenor-Appellant MH Mission Hospital, LLLP ("Mission") for the development of a freestanding emergency department in Arden, Buncombe County, conditionally approved by the Agency on 24 May 2022. Purporting to act out of concern arising from the pandemic, the Agency did not hold a public hearing pursuant to N.C.G.S. § 131E-185(a1)(2), instead attempting to

HENDERSON CNTY. HOSP. CORP. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

substitute the required public hearing with an expanded opportunity for written comments. Petitioner-Appellees Fletcher Hospital Inc. d/b/a AdventHealth Hendersonville ("Advent" or "AdventHealth") and Henderson County Hospital Corp. d/b/a Pardee Hospital ("Pardee"), two other healthcare providers in the same region as the proposed facility, filed petitions for a contested case hearing in the Office of Administrative Hearings on 23 June 2022.

The ALJ, in an 85-page final decision, affirmed the Agency on all substantive grounds but nonetheless reversed the conditional approval on the basis that the Agency failed to conduct a public hearing. Advent, Pardee, Mission, and the Agency all appeal.

## ANALYSIS

On appeal, the parties' arguments reduce to three broad categories. First, (A) all parties contest the ALJ's determinations as to the Agency's failure to hold a public hearing during the pandemic. Mission and the Agency argue the procedures during the pandemic were, contrary to the ALJ's holding, legally adequate, while Advent and Pardee argue the ALJ erred in its determination that they did not suffer substantial prejudice. Second, (B) Pardee argues the ALJ erred both in conducting discovery and in its determinations as to the adequacy of discovery before the Agency, impermissibly disallowing evidence pertaining to two applications Pardee alleged should have been subject to a competitive review process alongside Mission's. Finally, (C) Advent and Pardee both argue the ALJ erred in finding Mission's application was

HENDERSON CNTY. HOSP. CORP. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

compliant with three statutory CON criteria arising under N.C.G.S. § 131E-183(a); namely, Criteria 3, 6, and 18(a).

Our standard of review when reviewing an ALJ's final decision is governed by N.C.G.S. § 150B-51, which dictates that we apply either de novo review or the whole record test depending on the scope of the challenge:

> (b) The court reviewing a final decision may affirm the decision or remand the case for further proceedings. It may also reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the findings, inferences, conclusions, or decisions are:
>     (1) In violation of constitutional provisions;
>     (2) In excess of the statutory authority or jurisdiction of the agency or administrative law judge;
>     (3) Made upon unlawful procedure;
>     (4) Affected by other error of law;
>     (5) Unsupported by substantial evidence admissible under [N.C.G.S. §] 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or
>     (6) Arbitrary, capricious, or an abuse of discretion.
>
> (c) In reviewing a final decision in a contested case, the court shall determine whether the petitioner is entitled to the relief sought in the petition based upon its review of the final decision and the official record. With regard to asserted errors pursuant to subdivisions (1) through (4) of subsection (b) of this section, the court shall conduct its review of the final decision using the de novo standard of review. With regard to asserted errors pursuant to subdivisions (5) and (6) of subsection (b) of this section, the court shall conduct its review of the final decision using the whole record standard of review.

N.C.G.S. § 150B-51(b)-(c) (2023). Moreover, especially when applying the whole record standard of review, we are cognizant of the fact that, while an ALJ's final

HENDERSON CNTY. HOSP. CORP. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

decision is the sole object of our review, the ALJ often sets out its findings and conclusions in relation to those of the Agency pursuant to its own contested case procedures in N.C.G.S. § 150B-23. *See* N.C.G.S. § 150B-23 (2023) (authorizing ALJ review of the Agency in a contested case in the event the Agency "(1) [e]xceeded its authority or jurisdiction[,] (2) [a]cted erroneously[,] (3) [f]ailed to use proper procedure[,] (4) [a]cted arbitrarily or capriciously[,] (5) [f]ailed to act as required by law or rule."). Given the challenge-dependent nature of the standard of review, we will specify before each subsection which standard we employ.

## A. Failure to Hold a Hearing

First, we address whether the Agency erred in failing to hold a public hearing concerning the Mission application, whether the absence of such a hearing substantially prejudiced Advent and Pardee, and what remedy, if any, applies. This argument is raised on appeal primarily by Mission and the Agency, but is also contested in part by Advent and Pardee in that the ALJ ruled that they did not suffer substantial prejudice due to the lack of a public hearing. As this issue is an alleged error of law in the ALJ's final decision, committed in its capacity reviewing the Agency for improper procedure, we review the matter de novo. N.C.G.S. § 150B-51(b)(4), (c) (2023).

As to Mission and the Agency's argument that a public hearing was not required during the pandemic, although the Agency concedes that a public hearing was required under the letter of N.C.G.S. § 131E-185(a1)(2), it nonetheless argues

HENDERSON CNTY. HOSP. CORP. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

that such a hearing should not have been required in this case because of the exigent public health circumstances. While the Agency argues that it provided a period for the public to provide written comments in lieu of a public hearing and outlines the steps it took to communicate the availability of this alternative process to both interested parties and the public, it does not meaningfully contend that this alternative procedure satisfied the statutory requirement. Instead, it argues that providing a public hearing during the pandemic would have rendered it derelict in its statutory duties under N.C.G.S. § 143B-137.1.

N.C.G.S. § 131E-185(a1)(2) provides that, "[n]o more than 20 days from the conclusion of the written comment period, the Department [of Health and Human Services] shall ensure that a public hearing is conducted at a place within the appropriate service area if . . . the proponent proposes to spend five million dollars ($5,000,000) or more . . . ." N.C.G.S. § 131E-185(a1)(2) (2023). Meanwhile, Under N.C.G.S. § 143B-137.1,

> [i]t shall be the duty of the Department [of Health and Human Services] to provide the necessary management, development of policy, and establishment and enforcement of standards for the provisions of services in the fields of public and mental health and rehabilitation with the intent to assist all citizens—as individuals, families, and communities—to achieve and maintain an adequate level of health, social and economic well-being, and dignity. Whenever possible, the Department shall emphasize preventive measures to avoid or to reduce the need for costly emergency treatments that often result from lack of forethought. The Department shall establish priorities to eliminate those excessive expenses incurred by the State

HENDERSON CNTY. HOSP. CORP. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

> for lack of adequate funding or careful planning of preventive measures.

N.C.G.S. § 143B-137.1 (2023). Even if the use of mandatory language in this general directive to the department could, under different circumstances, constitute a colorable basis for its failure to provide a public hearing during the pandemic, it is well established that, "when two statutes arguably address the same issue, one in specific terms and the other generally, the specific statute controls." *High Rock Lake Partners, LLC v. N.C. Dep't of Transp.*, 366 N.C. 315, 322 (2012). "And[,] when that specific statute is clear and unambiguous, we are not permitted to engage in statutory construction in any form." *Id.* Regardless of the Agency's invocation of its general statutory duties under N.C.G.S. § 143B-137.1, we cannot ignore the statutory requirement of N.C.G.S. § 131E-185(a1)(2) that it hold a public hearing.[1] We therefore affirm the ALJ's determination that the Aency utilized improper procedure. *Cf. Fletcher Hosp. Inc. v. N.C. Dep't of Health & Hum. Servs., Div. of Health Serv. Regul., Health Care Plan. & Certificate of Need Section*, __ N.C. App. __, __ (2024) ("[T]he Agency was required to hold a public hearing under the facts in this case, and its failure to do so was error.").

---

[1] Nor, as a practical matter, do we see written communications as equivalent to a public hearing. Anyone who lived, worked, and communicated through the pandemic can attest to the qualitative shortcomings of written communication relative to face-to-face contact. Even as a necessary evil during the height of COVID's spread, distanced engagement was never a true replacement.

HENDERSON CNTY. HOSP. CORP. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

In the alternative, Mission and the Agency argue that the failure to hold a public hearing during the pandemic did not constitute reversible error per se before the ALJ because the failure to hold a public hearing did not substantially prejudice Pardee and Advent. They base this argument primarily on N.C.G.S. § 150B-23, which dictates that, in a contested case, a petitioner must "state facts tending to establish that the agency . . . has [] substantially prejudiced the petitioner's rights and that the agency, [*inter alia*,] [f]ailed to use proper procedure." N.C.G.S. § 150B-23 (2023). They also argue the ALJ misinterpreted caselaw in reversing the Agency's determination on this basis.

In its order, the ALJ ruled that the "[d]eprivation of AdventHealth's and Pardee's right to speak at a public hearing in and of itself is substantial prejudice." Mission and the Agency contest this ruling on the basis that, in our CON caselaw, "[t]he harm required to establish substantial prejudice cannot be conjectural or hypothetical. It must be concrete, particularized, and 'actual' or imminent." *Surgical Care Affiliates, LLC v. N.C. Dep't of Health & Hum. Servs., Div. of Health Serv. Regul., Certificate of Need Section*, 235 N.C. App. 620, 631 (2014), *disc. rev. denied*, 368 N.C. 242 (2015). In particular, they argue the ALJ incorrectly relied on *Hospice at Greensboro, Inc. v. N.C. Dept. of Human Resources, Division of Facility Services*, 185 N.C. App. 1, *disc. rev. denied*, 361 N.C. 692 (2007), in making the determination that the deprivation of the right to a public hearing itself constituted substantial prejudice.

HENDERSON CNTY. HOSP. CORP. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

In *Hospice*, the matter at issue was whether the Agency's issuance of a "No Review" determination—a path to the approval of a medical facility exempt from the CON process—substantially prejudiced the appellant. *Id.* at 3, 7. In that case, we held that "the issuance of a 'No Review' letter, which results in the establishment of 'a new institutional health service' without a prior determination of need, substantially prejudices a licensed, pre-existing competing health service provider as a matter of law." *Id.* at 16. We explained our reasoning for the holding as follows:

> Because an applicant for a CON must "demonstrate that the proposed project will not result in unnecessary duplication of existing or approved health service capabilities or facilities," this interest (which the General Assembly has also determined to be a public interest) is vetted during the CON application process. Competing hospice providers, like HGI, may participate in the CON application process by filing "written comments and exhibits concerning a proposal [for a new institutional health service] under review with the Department." [N.C.G.S.] § 131E-185(a1) (2005). Such comments may include
>
>> a. Facts relating to the service area proposed in the application;
>> b. Facts relating to the representations made by the applicant in its application, and its ability to perform or fulfill the representations made;
>> c. Discussion and argument regarding whether, in light of the material contained in the application and other relevant factual material, the application complies with relevant review criteria, plans, and standards.
>
> *Id.*
>
> Here, HGI was denied any opportunity to comment on the CON application, because there was no CON process. In

HENDERSON CNTY. HOSP. CORP. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

> fact, the CON Section's issuance of a "No Review" letter to Liberty effectively prevented any existing health service provider or other prospective applicant from challenging Liberty's proposal at the agency level, except by filing a petition for a contested case. We hold that the issuance of a "No Review" letter, which resulted in the establishment of a "new institutional health service" in HGIs service area without a prior determination of need was prejudicial as a matter of law.

*Id.* at 16-17. In other words, while we did not elaborate on whether and to what extent the denial of statutorily-required proceedings short of the total denial of an appellant's participation in the certificate of need process could constitute prejudice as a matter of law, we considered the written portion of the process particularly significant and emphasized the functional exercise of discussion and argument. *Id.* This renders *Hospice*'s application disanalogous to the instant case, as the holding in *Hospice* primarily concerns the availability of a substantive discussion process and the ability to receive comment, not the specific procedure utilized. In light of this limitation on the application of *Hospice*, we hold that the ALJ's reliance on this case was in error. *Hospice*'s analytical emphasis was placed on the availability of a commentary process to gather facts and hear argumentation, which was still present here. *Cf. Fletcher*, __ N.C. App. at __ ("Our determination in *Hospice at Greensboro* represents a narrow holding in a fact-specific case, and its guidelines apply to such instances where a petitioner is deprived of *any* opportunity to contest the applicant's proposal at the Agency level.").

HENDERSON CNTY. HOSP. CORP. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

Here, Advent and Pardee do not satisfy their burden to show substantial prejudice occurred. Setting aside the procedural harm done to Advent, Pardee, and the public when the Agency failed to hold a public hearing, the ALJ did not evaluate specific evidence on the record which would indicate whether or not any concrete harm came to Advent and Pardee that was not the result of generalized market competition. As we have repeatedly held, "*mere* competitive advantage [is] an insufficient basis upon which to argue prejudice." *CaroMont Health, Inc. v. N. Carolina Dep't of Health & Hum. Servs. Div. of Health Serv. Regul., Certificate of Need Section*, 231 N.C. App. 1, 9 (2013) (emphasis added); *see also Parkway Urology, P.A. v. N. Carolina Dep't of Health & Hum. Servs., Div. of Health Serv. Regul., Certificate of Need Section*, 205 N.C. App. 529, 539 (2010) ("Rex's argument, in essence, would have us treat any increase in competition resulting from the award of a CON as inherently and substantially prejudicial to any pre-existing competing health service provider in the same geographic area. This argument would eviscerate the substantial prejudice requirement contained in [N.C.G.S.] § 150B-23(a). . . . Rex was required to provide specific evidence of harm resulting from the award of the CON to CCNC that went beyond any harm that necessarily resulted from additional LINAC competition in Area 20, and NCDHHS concluded that it failed to do so."), *disc. rev. denied*, 365 N.C. 78 (2011).

Given the clarity with which the ALJ signaled that the sole basis for the reversal below was its application of *Hospice* and *ipso facto* substantial prejudice

HENDERSON CNTY. HOSP. CORP. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

result, we reverse this portion of the final decision. However, just as the absence of a hearing does not automatically constitute substantial prejudice, our caselaw does not categorically preclude increased competition from constituting substantial prejudice; rather, to constitute substantial prejudice, a market competitor appealing to the ALJ must make a *specific* argument as to how that increased competition concretely affects their provision of services. *See Parkway*, 205 N.C. App. at 539 ("Rex reasons[] [that] any additional LINAC capacity at CCNC would necessarily lower the number of LINAC treatments performed at Rex and, as a result, have a substantial impact on Rex's revenues. Rex did not, however, quantify this financial harm in any specific way, other than testimony regarding the amount of revenue Rex receives from its LINAC treatments."). Here, as we are cognizant that our reversal of the ALJ's holding with respect to *Hospice* is likely to have an impact on its overall analysis with respect to substantial prejudice, we remand this case to the ALJ for further consideration of whether substantial prejudice existed on a basis other than per se substantial prejudice due to the hearing's absence.

### B. Discovery and Evidentiary Rulings

Next, we address Advent and Pardee's contentions that the ALJ both erred in its own discovery process and in its review of the adequacy of discovery before the Agency, as well as errors in excluding purportedly relevant evidence. All of these alleged errors stem from the same underlying argument concerning the interpretation of an Agency regulation; namely, that the Agency should have treated

HENDERSON CNTY. HOSP. CORP. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

two CON applications by third parties in the same timeframe as subject to competitive review alongside the Mission application. As we review issues of law in an administrative appeal de novo, *see* N.C.G.S. § 150B-51(b)-(c) (2023); *Total Renal Care of N.C., LLC v. N.C. Dep't of Health & Hum. Servs.*, 242 N.C. App. 666, 672 (2015), we evaluate anew whether the Agency misapplied the applicable regulation and whether, by extension, the ALJ erred in rejecting Advent and Pardee's allegations of error below. To the extent any further aspects of this issue remain after resolution of the interpretive component, "orders regarding discovery matters . . . will not be upset on appeal absent a showing of abuse of [] discretion[,]" *Evans v. United Servs. Auto. Ass'n*, 142 N.C. App. 18, 27, *disc. rev. denied*, 353 N.C. 371 (2001), nor will rulings concerning the exclusion of evidence. *Williams v. Bell*, 167 N.C. App. 674, 678, *disc. rev. denied*, 359 N.C. 414 (2005).

For their argument that the Agency should have treated two third-party applications as competitive, Advent and Pardee cite 10A NCAC 14C.0202, which defines "competitive review" as review in which "two or more applications [are] submitted to begin review in the same review period proposing the same new institutional health service in the same service area and the CON Section determines that approval of one application may require denial of another application included in the same review period." 10A NCAC 14C.0202 (2023). According to Advent and Pardee, the Agency—and, in reviewing the Agency, the ALJ—incorrectly determined that the applications of Mission and its alleged competitor could be reviewed

HENDERSON CNTY. HOSP. CORP. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

individually, having cursorily "dismissed the possibility" that either application's approval could be mutually exclusive with the others'.

At the threshold, we note that, despite Advent and Pardee's characterization, the record reflects that the Agency does, in fact, implement an intake process for determining whether any given subset of CON applications are in competition. During a deposition while this case was before the ALJ, Agency staff offered testimony explaining why the Agency determined Mission's application and that of its alleged competitor were not in competition:

> Q. When did you refer to or think about this Rule 10A NCAC 14.0202 with regard to review of the [alleged competitor's] application?
>
> A. Well, first I noticed that they weren't considered competitive reviews. At least I was not told they were competitive reviews when they were assigned to me. And during the course of the review I did not see anything in the two applications that would change that.
>
> Q. How is the determination typically made by the agency for when applications are considered competitive? You mentioned you weren't told that it was competitive when assigned to you. Can you explain that to us, please?
>
> A. Right. Initially, when two applications come in for the same review period for the same service in the same service area, an initial assessment is made by the management team checking the applications in about whether or not they appear like they could be competitive.
>
> Q. Do you know who did that assessment concerning the two freestanding emergency department applications in Buncombe County?

HENDERSON CNTY. HOSP. CORP. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

A.  No.

Q.  Is there any formal documentation of that assessment in the agency file?

A.  No.

Q.  Looking at Deposition Exhibit 17, at the definition of "competitive review," Mr. McKillip, does the definition include at the end that approval of one application may require denial of another application included in the same review period?

A.  Yes.

Q.  If two applications could, at least theoretically, be approved, does the agency consider them not to be competitive?

A.  As far as the initial review, it would depend—if it was clear they were not competitive, then they would be, as it was in this case, identified as non-competitive applications. If it's not clear at the initial check-in, then they might provisionally be considered competitive, and then the analyst would make the determination later, during the course of the review.

Q.  Did you assume at the beginning of the review that these applications had been determined to be non-competitive by CON section management?

A.  Yes.

Q.  Did you do any analysis when you reviewed the Candler and Arden 2022 applications concerning whether they were competitive?

A.  I did not see anything in the applications that would indicate that they had to be considered competitive applications.

HENDERSON CNTY. HOSP. CORP. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

Q. Does the agency frequently in reviews look at other information filed by an applicant in other applications?

. . . .

A. No.

Q. Does the agency look at other decisions that relate to the same type of service, like a freestanding emergency department, when reviewing an application for that service?

A. An analyst has discretion to look at prior findings.

Q. Mr. McKillip, the definition of "competitive review" does not state the agency is prohibited from looking at another application for the same service filed in the same review period if it determines the applications are not competitive; does it?

A. No.

Q. So in other words, there's no requirement, for example, that two different analysts be assigned to the review of those applications so that one analyst doesn't see both?

A. Correct.

Q. Would you agree that the definition of "competitive review" does not circumscribe the scope of what the project analyst can consider when reviewing the two applications during the review when they're non-competitive?

A. Yes.

Q. [] [W]hen you were reviewing the [alleged competitor's] application, what was your general approach to the review?

A. I reviewed the application against the statutory criteria. There were comments after drafting an initial draft of the findings. I read the comments and response to comments

HENDERSON CNTY. HOSP. CORP. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

and then make final edits to the first draft and I submit that to my cosigner.

Q. If I understood your response, your sequence is to review the application first and to do initial draft of the findings and then look at the comments and response to comments; did I hear you correctly?

A. Yes.

Agency staff then went on to conduct a review of both applications, observed that there was overlap in the proposed service area's zip codes, but nonetheless determined that the overlap did not cause the Agency to deviate from its initial determination that the two applications were not in competition.

Bearing this in mind, nothing in the language of 10A NCAC 14C.0202 mandates that the Agency employ a different procedure in determining whether two applications must be reviewed in tandem per the competitive review process. While Advent and Pardee argue that the language indicating competitive, in-tandem review of two applications occurs if "approval of one application may require denial of another application" required the Agency to employ such review if even the slightest chance of mutual exclusivity between the applications existed, this interpretation ignores the broad delegation of authority to the Agency authorized by the very same section. A full reading of the section reflects that competitive review occurs when "two or more applications [are] submitted to begin review in the same review period proposing the same new institutional health service in the same service area *and the CON Section determines that approval of one application may require denial of*

HENDERSON CNTY. HOSP. CORP. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

*another application included in the same review period.*"  10A NCAC 14C.0202 (2023) (emphasis added).  In other words, the language makes clear that the determination of likelihood is entrusted to the discretion of the Agency, not fixed as a matter of law. While we do not foreclose the possibility that the Agency could abuse this delegation of authority, no such showing has been made here.   Consequently, no error occurred under 10A NCAC 14C.0202.

Having so held, we are also satisfied that no further error occurred, as the Agency's adequate procedure for determining whether competitive review is warranted under 10A NCAC 14C.0202 rendered the denial of discovery and the exclusion of evidence concerning unrelated third-party applications appropriate.

### C. Substantive Challenges

Finally, we address Advent and Pardee's substantive challenges to the final decision arising under Criteria 3, 6, and 18(a) of N.C.G.S. § 131E-183(a).  N.C.G.S. § 131E-183(a) provides, in pertinent part, as follows:

> (a) The Department shall review all applications utilizing the criteria outlined in this subsection and shall determine that an application is either consistent with or not in conflict with these criteria before a certificate of need for the proposed project shall be issued.
>
> . . . .
>
> (3) The applicant shall identify the population to be served by the proposed project, and shall demonstrate the need that this population has for the services proposed, and the extent to which all residents of the area, and, in particular, low income persons, racial and ethnic minorities, women,

HENDERSON CNTY. HOSP. CORP. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

handicapped persons, the elderly, and other underserved groups are likely to have access to the services proposed.

. . . .

(6) The applicant shall demonstrate that the proposed project will not result in unnecessary duplication of existing or approved health service capabilities or facilities.

. . . .

(18a) The applicant shall demonstrate the expected effects of the proposed services on competition in the proposed service area, including how any enhanced competition will have a positive impact upon the cost effectiveness, quality, and access to the services proposed; and in the case of applications for services where competition between providers will not have a favorable impact on cost effectiveness, quality, and access to the services proposed, the applicant shall demonstrate that its application is for a service on which competition will not have a favorable impact.

N.C.G.S. § 131E-183(a)(3), (6), (18a) (2023). As evaluating whether the ALJ erred in finding the Mission application compliant with these criteria is a substantive evaluation of the application by the ALJ, we "conduct [our] review of the final decision using the whole record standard of review." N.C.G.S. § 150B-51(c) (2023). "In applying the whole record test, the reviewing court is required to examine all competent evidence in order to determine whether the [final] decision is supported by substantial evidence." *Surgical Care*, 235 N.C. App. at 622-23 (marks omitted).

Here, while we technically review the determination of the ALJ for substantial evidence on the record, we note that some of Advent and Pardee's arguments are

- 19 -

HENDERSON CNTY. HOSP. CORP. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

better characterized as methodological critiques of the ALJ—and, indirectly,[2] the Agency—rather than challenges to the sufficiency of the evidence *per se*. Specifically, they contend that the Agency, which had found a CON application by Mission from one year earlier nonconforming with respect to Criteria 3 and 18(a), erred in determining that Mission's 2022 application *did* conform with Criteria 3 and 18(a) without conducting a comparative evaluation between the 2022 application and a similar, rejected application submitted by Mission in 2021. As this argument is

---

[2] While the statute governing judicial review of administrative decisions, N.C.G.S. § 150B-51, used to contemplate direct judicial review of this type of Agency determination, revisions by our General Assembly in 2011 have refocused our review on the final decision of the ALJ:

> In 2011, the General Assembly amended the Administrative Procedure Act ("APA"), conferring upon administrative law judges the authority to render final decisions in challenges to agency actions, a power that had previously been held by the agencies themselves. *See* 2011 N.C. Sess. Laws 1678, 1685-97, ch. 398, §§ 15-55. Prior to the enactment of the 2011 amendments, an ALJ hearing a contested case would issue a recommended decision to the agency, and the agency would then issue a final decision. In its final decision, the agency could adopt the ALJ's recommended decision *in toto,* reject certain portions of the decision if it specifically set forth its reasons for doing so, or reject the ALJ's recommended decision in full if it was clearly contrary to the preponderance of the evidence. *See* [N.C.G.S.] § 150B36, *repealed by* 2011 N.C. Sess. Laws 1678, 1687, ch. 398, § 20. As a result of the 2011 amendments, however, the ALJ's decision is no longer a recommendation to the agency but is instead the final decision in the contested case. [N.C.G.S.] § 150B'34(a).

> Under this new statutory framework, an ALJ must "make a final decision . . . that contains findings of fact and conclusions of law" and "decide the case based upon the preponderance of the evidence, giving due regard to the demonstrated knowledge and expertise of the agency with respect to facts and inferences within the specialized knowledge of the agency." *Id.*

*AH N. Carolina Owner LLC v. N.C. Dep't of Health & Hum. Servs.*, 240 N.C. App. 92, 98-99 (2015). Our review of substantive issues will therefore be based on the ALJ's final decision, with occasional references as necessary to the ALJ's determinations as they pertain to its review of the Agency.

HENDERSON CNTY. HOSP. CORP. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

unrelated to any specific finding the ALJ reached, we cannot meaningfully review it for substantial evidence on the record.

However, as a general attribution that the ALJ erred by failing to conduct a comparative evaluation between the adjacent years' applications, this argument still fails. Aside from a general citation indicating that an abuse of discretion occurs when an administrative decision "lack[s] [] fair and careful consideration," *State ex rel. Com'r of Ins. v. N.C. Rate Bureau*, 300 N.C. 381, 420 (1980), *abrogated by Matter of Redmond by & through Nichols*, 369 N.C. 490 (2017), Advent and Pardee point us to no binding authority justifying the position that the absence of such a comparative analysis constitutes reversible error. Moreover, we think the determination that applications may be best reviewed in isolation of similar applications from current years, while discretionary, is eminently reasonable insofar as it frees the decisionmaker from any biases it may have for or against the applicant and allows it to better evaluate the current-year application in light of a community's changing needs.

Advent and Pardee also argue that the ALJ misapplied Criterion 18(a) in that the Agency did not specifically conduct an "evaluation of the effects or impact of the [proposed facility] on AdventHealth or Pardee, or on Mission's monopoly status" and the ALJ did not, in reviewing the Agency, find that the Agency had any obligation to do so. As to this argument, we affirm the ALJ in all respects. Adent and Pardee have not directed us to—and we have not discovered—any binding law indicating that

HENDERSON CNTY. HOSP. CORP. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

Criterion 18(a) requires an administrative decision maker to examine the effects of a new facility on specific competit*ors* as part of a broader inquiry concerning impact on competition, and the plain language of the criterion refers to competition in the abstract, not competitor-specific, sense.[3]  *See* N.C.G.S. § 131E-183(a)(18a) (2023) ("The applicant shall demonstrate the expected effects of the proposed services on competition in the proposed service area, including how any enhanced competition will have a positive impact upon the cost effectiveness, quality, and access to the services proposed[.]").  Furthermore, while the applicable caselaw does treat particular providers monopoly or near-monopoly status as salient, *see Craven Reg'l Med. Auth. v. N.C. Dep't of Health & Hum. Servs.*, 176 N.C. App. 46, 57 (2006) ("[The petitioner], in effect, argues that giving it a monopoly in the service area would increase competition.  We decline to adopt this incongruous line of reasoning."),[4] we will not treat "monopoly" as a "magic word" without which the ALJ's otherwise sound

---

[3] To the extent Advent and Pardee's argument rests on our reading "competition" as a collective noun referring to a group of competitors for purposes of N.C.G.S. § 131E-183(a)(18a), we reject this interpretation.  At time of writing, "competition" is typically used as a collective noun in that sense relatively informally and outside of legal settings.  *See Competition*, *Black' Law Dictionary* 355 (11th Ed. 2019) (defining "competition" as "[t]he struggle for commercial advantage" or "the effort or action of two or more commercial interests to obtain the same business from third parties" and omitting any definition referring collectively to competitors); *Competition*, *American Heritage Dictionary* 284 (3rd Ed. 1993) (omitting mention of "competition" as referring collectively to competitors).

[4] We further note that, in *Craven*, the issue before us was a challenge *by* an entity holding a monopoly to a *competitor's* compliance with Criterion 18(a), not a challenge to a monopoly-holder's compliance with Criterion 18(a).  *Id.* at 56-57.  To the extent Advent and Pardee cite *Craven* for the proposition that monopoly status threatens an applicant's compliance with Criterion 18(a) by default or alters the required analytical framework, this is an acontextual reading of our precedent.

HENDERSON CNTY. HOSP. CORP. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

reasoning becomes reversibly erroneous.[5]

As for the arguments that are better conceptualized in terms of whole record review, Advent and Pardee contend that the ALJ misapplied Criterion 6 insofar as it did not reverse the Agency for failing to "do a substantive assessment of the existing or approved service capabilities" in the area. Under Criterion 6, "[t]he applicant shall demonstrate that the proposed project will not result in unnecessary duplication of existing or approved health service capabilities or facilities." N.C.G.S. § 131E-183(a)(18a) (2023). As employees of the Agency who testified before the ALJ indicated that the Agency did not specifically analyze allegedly comparable services offered at Advent and Pardee, Advent and Pardee seek to overturn the ALJ's final decision. However, in its review of the Agency, the ALJ reasoned, in a section entitled "Agency Review of Statutory Criterion 6," that the Agency abided by all statutorily-prescribed duties during the review process and that Advent and Pardee had not otherwise presented a basis to overturn the Agency decision:

> 203. Criterion 6 applied to the Mission Application. Statutory Review Criterion 6 requires that an applicant demonstrate that the proposed project will not result in unnecessary duplication of existing or approved health service capabilities or facilities. (Jt. Ex. 2, Agency File AF 511; see also N.C. Gen. Stat. § 131E-183(a)(6)) (Tr. Vol. 15, Platt, p. 2414) (Tr. Vol. 10, Sandlin, p. 1616).
>
> 204. Statutory Review Criterion 6 requires the applicant to identify the other providers who provide the same services

---

[5] This is to say nothing of the substantial evidence on the record to support the ALJ's position that Mission did not, in fact, have a monopoly in the proposed service area.

HENDERSON CNTY. HOSP. CORP. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

in the proposed service area.  (Tr. Vol. 2, McKillip, p. 225).

205. After identifying the other providers in the service area, the applicant must then explain why the proposed project will not be an unnecessary duplication of services. (Tr. Vol. 2, McKillip, p. 225) (Tr. Vol. 15, Platt, p. 2415).

206. The Agency, when reviewing an application, decides if the information provided by the applicant demonstrates that the proposed project will result in an unnecessary duplication of existing or approved services.  (Tr. Vol. 2, McKillip, pp. 225-26).

207. Regarding Statutory Review Criterion 6, Ms. Pittman testified, "You just have to demonstrate that the proposed project will not result in unnecessary duplication of existing or approved health service capabilities or facilities." (Tr. Vol. 5, Pittman, p. 895).

208. Statutory Review Criterion 6 does not require that the Agency look at how other providers currently providing the same services will be impacted by the proposed service. (Tr. Vol. 5, Pittman, p. 867).

209. In evaluating Mission's CON application under Statutory Review Criterion 6, it was not necessary for the Agency to conduct a capacity evaluation of either Pardee or AdventHealth because it is not relevant to the Agency's evaluation of Criterion 6.  (Tr. Vol. 1, McKillip, p. 138).

210. When reviewing the Mission Application under Statutory Review Criterion 6, the Agency reviewed both the written comments of Petitioners in opposition to the Mission Application and Mission's response to those comments regarding drive times and access to emergency departments.  (Tr. Vol. 1., McKillip, p. 140).

211. Section G of the Mission Application relates to its conformity with Statutory Review Criterion 6.  (Tr. Vol. 15, Platt, p. 2414) (Jt. Ex. 1, Mission Application MH-97-98).

HENDERSON CNTY. HOSP. CORP. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

212. Section G of the Mission Application states, "The proposed FSER will provide more timely access to critical care services in the South Buncombe County market and to patients in North Henderson County." (Jt. Ex. 1, Mission Application MH-97).

213. Section G of the Mission Application identifies the existing providers in the proposed service area that provide the same service components proposed in the Mission Application as: Pardee, AdventHealth, and Mission Main Hospital. (Jt. Ex. 1, Mission Application MH-97) (Tr. Vol. 15, Platt, pp. 2414-15).

214. The Agency reviewed and applied Statutory Review Criterion 6 to the Mission Application. Following its review, the Agency found Mission's Application to be conforming to Statutory Review Criterion 6. (Jt. Ex. 2, Agency File AF 512) (Tr. Vol. 15, Platt, pp. 2427-28) (Tr. Vol. 1, McKillip, pp. 130-31).

215. The Agency determined that Mission's Application was conforming to Statutory Review Criterion 6 because it adequately demonstrated that the proposal would not result in an unnecessary duplication of existing or approved services in the service area based on:

a. The fact there are no other FSEDs in the proposed service area; and
b. Mission adequately demonstrated that the proposed FSED is needed in addition to the existing or approved providers of emergency services in the service area. (Jt. Ex. 2, Agency File AF 512).

216. AdventHealth argued that the Agency erred in determining that the Mission Application was conforming to Statutory Review Criterion 6 because the proposed service would unnecessarily duplicate existing services. Ms. Sandlin opined that Mission's Application was nonconforming to Statutory Review Criterion 6 because the proposed project is an unnecessary duplication of already existing services. (Tr. Vol. 10, Sandlin, p. 1636) (Jt. Ex.

HENDERSON CNTY. HOSP. CORP. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

144).

217. Ms. Sandlin was questioned several times regarding her assertion that either Mission or the Agency were required to perform an analysis of the impact of Mission's proposed FSED on other providers in terms of lost patients, market share or revenues. (Tr. Vol. 10, Sandlin, pp. 1761-62). Ms. Sandlin did not affirmatively state that the statute required that analysis. Id. Ms. Sandlin only stated, "The Agency was responsible for applying Criterion 6 and 18a in this review." Id.

218. Pardee argued that the Agency erred in determining that the Mission Application was conforming to Statutory Review Criterion 6 because the project will result in unnecessary duplication of services. (Jt. Ex. 116). Ms. Carter opined regarding Statutory Review Criterion 6: "And in my opinion, the statute is very clear that that is the purpose of Criterion 6 to evaluate unnecessary duplication of the existing facilities and providers." (Tr. Vol. 7, Carter, p. 1258). Ms. Carter further stated the Agency did not conduct an analysis regarding unnecessary duplication under Statutory Review Criterion 6. (Id. at p. 1259).

219. The key determination in the analysis of unnecessary duplication under Criterion 6 is whether the proposed service is unnecessary. (Tr. Vol. 15, Platt, p. 2415).

220. Ms. Platt opined that the Agency's application form is specific and that it asks the applicant to identify the existing and approved providers that are either in the service area or near the proposed service area. (Tr. Vol. 15, Platt, p. 2414-15).

221. Mission provided in its application a narrative describing why the proposed Arden FSED was not unnecessarily duplicative of existing and approved providers related to capacity constraints at the Mission Hospital main emergency department in downtown Asheville, population growth in the area that will increase

HENDERSON CNTY. HOSP. CORP. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

demand for emergency department services, and existing demand for the services. (Tr. Vol. 15, Platt, pp. 2415-16, 2427).

222. Mission, through its expert Ms. Platt, demonstrated that the Agency reviewed the Mission Application in the same manner it has reviewed prior applications when evaluating Criterion 6. (Tr. Vol. 15, Platt, pp. 2418-21) (Jt. Ex. 140, 141). The Atrium Health Ballantyne ED Agency Findings ("Ballantyne Findings") were issued on [22 October] 2021, in which the Agency approved the Ballantyne FSED project. In the Ballantyne Findings, the Agency's analysis of Criterion 6 consisted of the identification of the service area, identification of the existing and approved providers of the same service in the service area, and a summary of the narrative the applicant provided addressing why there is no unnecessary duplication of services. The analysis by the Agency of the Mission Application was consistent with the Agency's analysis in the Ballantyne Findings. In both the Ballantyne and Concord Agency Findings, the Agency reviewed the providers in or around the service area, summarized the narratives provided by the applicants, and reached a similar conclusion regarding conformity. (Tr. Vol. 15, pp. 2418-19) (Jt. Ex. 140, pp. 22-24) (Jt. Ex. 2, Agency File AF 511-12).

223. Similarly, the Atrium Health Concord ED Agency Findings ("Concord Findings") were issued on [21 April] 2022 and approved a FSED. In analyzing Criterion 6, the Concord Findings show that the Agency identified the service area defined by the applicant, identified the existing and approved providers of the same service in the service area, and quoted the narrative explanation provided by the applicant of why the project was not unnecessarily duplicative. Again, the analysis and approach used for Criterion 6 in the Mission Application was consistent with the approach and analysis by the Agency in the Concord Findings. (Tr. Vol. 15, pp. 2419-21) (Jt. Ex. 141, pp. 15-16) (Jt. Ex. 2, AF 511-12).

HENDERSON CNTY. HOSP. CORP. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

224. Further, Statutory Review Criterion 6 does not require that an applicant perform any adverse impact assessment or analysis of a proposed project's impact on other providers. (Tr. Vol. 15, Platt, p. 2415). Ms. Platt, Ms. Pittman, and Mr. McKillip all affirmatively testified that Statutory Review Criterion 6 does not require that an applicant demonstrate the impact the proposed services in its application will have on existing providers. (Tr. Vol. 15, Platt, p. 2415) (Tr. Vol. 1, McKillip, p. 138) (Tr. Vol. 5, Pittman, p. 867).

225. Ms. Platt agreed with the Agency and opined that the Mission Application was conforming to Statutory Review Criterion 6. (Tr. Vol. 15, Platt, p. 2428) (Jt. Ex. 160, p. 6).

226. The Tribunal finds that the testimony of Ms. Pittman, Mr. McKillip and Ms. Platt regarding the Agency's determination that the Mission Application was conforming to Statutory Review Criterion 6 was credible, reliable and persuasive.

227. This Tribunal finds that the Agency's application of Statutory Review Criterion 6 was reasonable and adequately supported. Statutory Review Criterion 6 does not require that an applicant perform any adverse impact assessment or analysis of a proposed project's impact on other providers.

On appeal, Advent and Pardee do not specify what substantive analysis they contend the Aency was required to make, what legal authority supports this position, or in what way the Mission application was, in fact, duplicative of their services. Instead, their argument is predicated solely on the absence of this "substantive assessment" and a recitation of several of their other criterion-based arguments. If Advent and Pardee believed the specifics of their existing services were so salient to the Agency's or the ALJ's analysis of Criterion 6, they were perfectly capable of

HENDERSON CNTY. HOSP. CORP. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

producing positive evidence to support that argument at an earlier stage of these proceedings. For our part, there is neither legal nor factual support for any allegations of administrative error before us, and we will not overturn the ALJ's final decision on such an unmoored basis.

Finally, Advent and Pardee contend that Mission's application should have been deemed nonconforming with Criteria 3, 6, and 18(a) on the basis of Mission's alleged lack of candor to the Agency as to its purpose. The basis for this argument is that the purpose of the new facility as articulated in an internal business memorandum by Mission's parent company was different than the statement of purpose provided to the Agency. Were it not the immediate subject of this sub-issue, we would find it obvious beyond the need for explanation that the operation of a service can be justified on the basis of both public utility and the desire for business growth—in much the same way that litigation can both raise legitimate legal issues and act as a tool to drive potential competitors from a market. Suffice it to say, this argument, even if true, would not merit reversal, as we see no mutual exclusivity between these two types of justifications.[6]

---

[6] Advent and Pardee also point to a difference in projections regarding anticipated market share and patient traffic between the two memoranda; however, we find it unremarkable that projections might also be more or less conservative depending on the methodologies used and the points they service. Tragically, the gathering and sharing of data is rarely an activity undertaken for the mere love of truth, and it would be impractical for this (or any) tribunal to police the influence of agendas in the presentation of information—only to ensure that they not bleed into or otherwise corrupt the integrity of neutral decisionmakers. Without a more specific allegation that the projections offered to the Agency were fraudulent or deceptive, we do not assume from the mere discrepancy that any reversible error occurred.

HENDERSON CNTY. HOSP. CORP. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

## CONCLUSION

While the ALJ correctly determined the Agency erred in failing to hold a public hearing, it misapplied *Hospice* in determining that the error substantially prejudiced Advent and Pardee. As the ALJ's reversal of the Agency's conditional approval of a CON to Mission was solely predicated on this legal error, we reverse the ALJ's final decision. N.C.G.S. § 150B-51(b) (2023) (permitting reversal on appeal if, *inter alia*, the final decision on review contains an error of law). However, because we also do not express any opinion on whether the competition-based harm alleged by Advent and Pardee below were sufficiently specific to constitute substantial prejudice, we remand to the ALJ for further proceedings to determine whether Advent and Pardee's allegations of prejudice were based on the mere fact of competition or a specific, concrete harm. *Parkway*, 205 N.C. App. at 539. Advent and Pardee's remaining challenges to the final decision are without merit.

AFFIRMED IN PART; REVERSED, VACATED, AND REMANDED IN PART.

Judge GORE concurs.

Judge GRIFFIN concurs in result.